UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGINALD ARMSTEAD,<br><br>                                        Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>                                        Defendant. | Case No.:  15-cv-2417-BEN (DHB)<br><br>**ORDER:**<br><br>**(1) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 16);**<br><br>**(2) DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT (ECF No. 17); AND**<br><br>**(3) REMANDING FOR FURTHER PROCEEDINGS** |

## I.     INTRODUCTION

On October 26, 2015, Plaintiff Reginald Armstead ("Plaintiff") filed a complaint pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3) of the Social Security Act requesting judicial review of the final administrative decision of the Commissioner of Social Security ("Commissioner" or "Defendant") regarding the denial of Plaintiff's claim for Supplemental Security Income ("SSI") benefits under the Social Security Act.  (ECF

1

No. 1.)    On February 9, 2016, Defendant filed an answer (ECF No. 11) and the administrative record ("A.R.") (ECF No. 12).

On May 9, 2016, Plaintiff filed a motion for summary judgment seeking reversal of Defendant's denial and an award of benefits, or, alternatively, remand for further administrative proceedings.  (ECF No. 16.)  Plaintiff contends that the Administrative Law Judge ("ALJ") committed reversible error by improperly rejecting the opinion of Dr. Ildiko Gerbatsch, a treating physician.  (ECF No. 16-1.)  On June 2, 2016, Defendant filed an opposition to Plaintiff's motion for summary judgment and a cross-motion for summary judgment.  (ECF Nos. 17, 18.)  On June 20, 2016, Plaintiff filed a reply to Defendant's opposition to his motion for summary judgment.  (ECF No. 19.)

After careful consideration of the record and the applicable law, and for the reasons set forth herein, the Court hereby **GRANTS** Plaintiff's motion for summary judgment (ECF No. 16), **DENIES** Defendant's cross-motion for summary judgment (ECF No. 17), and **REMANDS** the case for further administrative proceedings.

## II.    PROCEDURAL BACKGROUND

On or about April 30, 2012, Plaintiff protectively filed an application for SSI benefits alleging disability beginning on July 1, 2011.[1]  (A.R. 149–57, 62–71, 197.)   In his application, Plaintiff alleged disability due to back pain and carpal tunnel syndrome in both

---

[1] There is some confusion regarding Plaintiff's alleged disability onset date, likely because Plaintiff has applied for and been denied SSI benefits numerous times. (*See* A.R. 40.) For example, Plaintiff alleged in one application that his "disability began on April 1, 2007." (A.R. 149.) However, the majority of records in the A.R. note an alleged disability onset date of July 1, 2011. (*See* A.R. 40, 62, 197.)   Then, at his hearing before the ALJ, Plaintiff testified that he mistakenly wrote 2011 instead of 2010 in his application for benefits. (A.R. 42–43.) However, the ALJ's written opinion still notes an alleged disability onset date of July 1, 2011. (A.R. 12.) The Court need not take issue with the inconsistency related to Plaintiff's alleged disability onset date as it does not bear on the Court's ultimate determination. However, upon remand, the ALJ shall clarify Plaintiff's alleged disability onset date for the record.

hands.[2] (A.R. 62–71.)  Plaintiff's claim was initially denied on July 26, 2012, and upon reconsideration on March 19, 2013. (A.R. 83–87, 95–100.)

On April 24, 2013, Plaintiff requested a hearing before an ALJ. (A.R. 27, 101.)  ALJ Jesse J. Pease held a video hearing on February 28, 2014, regarding Plaintiff's application for SSI benefits. (A.R. 27, 38–61.)  On March 20, 2014, the ALJ rendered an unfavorable decision and concluded that Plaintiff was not entitled to benefits. (A.R. 8–37.)  Plaintiff requested review of the decision on April 27, 2014. (A.R. 7.)  The ALJ's decision became final on August 28, 2015, when the Social Security Appeals Council denied Plaintiff's request for review. (A.R. 3–6.)  Thereafter, Plaintiff filed the instant action. (ECF No. 1.)

## III.   LEGAL STANDARDS

### A.   Determination of Disability

To qualify for disability benefits under the Social Security Act, a claimant must demonstrate the following two things: (1) he suffers from a medically determinable physical or mental impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the applicant incapable of performing the work he previously performed or any other substantial gainful employment which exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A).  A claimant must meet both requirements to be classified as disabled. *Id*.

The Commissioner assesses a claim of disability through a five-step sequential evaluation process.  The five steps are:

1. Is claimant presently working in a substantially gainful activity?  If so, then the claimant is not disabled within the meaning of the Social Security Act.  If not, proceed to step two.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

-------

[2] Plaintiff alleged a disability onset date of July 1, 2011, but also attested that he stopped working on June 30, 2011, because he was laid off. (A.R. 196–97.)  Plaintiff nonetheless alleged that, despite being laid off, he believes his medical conditions were severe enough as of July 1, 2011, to prevent him from working. (A.R. 197.)

2. Is the claimant's impairment severe?  If so, proceed to step three.  If not, then the claimant is not disabled.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.  *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past?  If so, the claimant is not disabled.  If not, proceed to step five.  *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5. Is the claimant able to do any other work?  If so, then the claimant is not disabled.  If not, the claimant is disabled.  *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999)).  If an applicant is found to be disabled or not disabled at any step, there is no need to proceed further.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005) (citing *Schneider v. Comm'r of Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000)).

Although the ALJ must assist a claimant in developing a record, the claimant bears the burden of proof during the first four steps.  *Tackett*, 180 F.3d at 1098, n.3 (citing 20 C.F.R. § 404.1512(d)).  The Commissioner bears the burden of proof at the fifth step and must "show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity ("RFC"),[3] age, education, and work experience."  *Id*. at 1100 (citing 20 C.F.R. § 404.1560(b)(3)).

## B.   Scope of Review

The Social Security Act allows unsuccessful claimants to seek judicial review of the Commissioner's final agency decision.  42 U.S.C. §§ 405(g), 1383(c)(3).  The scope of

---

[3] The RFC is the most a claimant can still do in a work setting despite his limitations. 20 C.F.R. § 404.1545(a)(1).

judicial review is limited.  A reviewing court must affirm the Commissioner's decision unless it "is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999) (citing *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citation omitted) ("We may reverse the ALJ's decision to deny benefits only if it is based upon legal error or is not supported by substantial evidence."). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Tidwell*, 161 F.3d at 601 (citing *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten*, 44 F.3d at 1457 (citing *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993)).

The reviewing court must consider the record as a whole and weigh both the evidence that supports and detracts from the ALJ's conclusion. *Frost v. Barnhart,* 314 F.3d 359, 366–67 (9th Cir. 2002) (citing *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985)). If the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the reviewing court must uphold the denial of benefits.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, if the reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must nonetheless set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a conclusion.  *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (citing *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).  Section 405(g) of the Social Security Act permits the reviewing court to enter judgment affirming, modifying, or reversing the Commissioner's decision.  42 U.S.C. § 405(g).  The court may also remand the matter to the Social Security Administration for further proceedings. *Id*. If a case is remanded and an additional hearing is held, the Commissioner may modify or affirm the original findings of fact or the decision. *Id*.

///

///

5

## IV.   **FACTUAL BACKGROUND**

Plaintiff alleges that he became disabled as of July 1, 2011. (A.R. 197.) Initially, Plaintiff alleged disability due to back pain and carpal tunnel syndrome in both hands. (AR. 62–71.) At his hearing, Plaintiff also alleged disability due to leg, hip, and shoulder pain. (A.R. 43–49, 62.)  Prior to his disability, Plaintiff worked as a security guard, custodian, and handyman.  (A.R. 49–56.)

### A.   **Medical Evidence**

#### 1.   **Treating Physician Evidence**

##### a.   *Charles K. Jablecki, M.D.*

According to Dr. Jablecki's notes, Plaintiff had shoulder surgery in 2000.  (A.R. 248.) In or before 2003, Plaintiff also developed problems with back and bilateral leg pain. (A.R. 243, 246–52.)  Plaintiff underwent lumbar spine surgeries in November 2001 and November 2003.  (A.R. 248.)  In March 2003, Plaintiff had an MRI of the spine and shoulder, which identified cervical spine/disc disease and lumbosacral spine pathology. (A.R. 246–52.)  Plaintiff had also developed problems in his upper extremities, including problems with his hands.  (A.R. 246–52.)  In June 2003 and March 2004, Plaintiff was diagnosed with bilateral carpal tunnel syndrome.  (A.R. 251.)

In 2003, Plaintiff was referred to Dr. Jablecki for "electrodiagnostic studies to evaluate for root, plexus, and peripheral nerve pathology."  (A.R. 243.)  On or about June 26, 2003, Dr. Jablecki conducted a study on Plaintiff, which he determined to be normal as there "was no electrodiagnostic evidence of lumbosacral root, plexus, or peripheral nerve pathology."  (A.R. 243–45.)  In a subsequent study on March 8, 2004, Dr. Jablecki found no significant change.  (A.R. 253–56.)

On March 8, 2004, Dr. Jablecki examined Plaintiff "for a neurological evaluation of injuries sustained while working for the City of San Diego on May 21, 2002."  (A.R. 246–52.)  Dr. Jablecki evaluated Plaintiff's complaints of "pain and paresthesias in his upper extremities."  (A.R. 251.)  Specifically, Dr. Jablecki concluded that Plaintiff's carpal tunnel syndrome was most likely the cause of the pain and paresthesias in Plaintiff's hands, and

6

the next step would be to consider right and left carpal tunnel release.  (A.R. 251–52.)  Dr. Jablecki noted that he was deferring on addressing issues of disability status, work restrictions, future medical care, vocational rehabilitation, and apportionment.  (A.R. 252.)

In December 2005, Dr. Jablecki noted that Plaintiff had undergone left carpal tunnel release in November 2003 and right carpal tunnel release in April 2004.  (A.R. 257.)  However, Plaintiff continued to have problems with pain and stiffness in the right hand, as well as occasional numbness.  (A.R. 257.)  Thus, Plaintiff had been referred to Dr. Jablecki for repeat electrodiagnostic studies of his right upper extremity.  (A.R. 257–58.)  Dr. Jablecki found the study to be abnormal with the findings compatible with median nerve pathology at the right wrist.  (A.R. 257.)  Compared to the March 2004 study, Dr. Jablecki found minimal improvement of the nerve conduction, but no new abnormalities.  (A.R. 257.)

### b.   _Timothy Paul Armstrong, M.D._

In April 2011, Plaintiff saw Dr. Armstrong for a neurology outpatient consultation.  (A.R. 268–71.)  Plaintiff's chief complaints were "paroxysmal numbness and tingling and pain [in] both hands."  (A.R. 268.)  Plaintiff reported to Dr. Armstrong that his hands had been fine until three months prior to the consultation.  (A.R. 268.)  Dr. Armstrong's primary encounter diagnosis was carpal tunnel syndrome.  (A.R. 270.)   Dr. Armstrong recommended that Plaintiff wear an elbow protector and continue to wear wrist braces.  (A.R. 270.)  Dr. Armstrong also discussed treatment options with Plaintiff, including carpal tunnel steroid injections and another carpal tunnel release surgery.  (A.R. 270.)

### c.   _Aaron Schneir, M.D._

In or around May 2012, Plaintiff was diagnosed with diabetes.  (A.R. 290.)  He was prescribed Metformin.  (A.R. 286–305.)

### d.   _Ildiko Gerbatsch, M.D._

Plaintiff began seeing Dr. Gerbatsch on or around June 22, 2012.  (A.R. 323–25, 352.)  Plaintiff saw Dr. Gerbatsch for multiple issues, including diabetes, hypertension,

hyperlipidemia, back pain, and leg pain.  (A.R. 323–82.)  Plaintiff saw Dr. Gerbatsch approximately once per month until at least January 31, 2014.  (A.R. 356–58.)

Plaintiff reported sleeping pain and numbness and tingling in his right thigh in November 2012.  (A.R. 336–38.)  Dr. Gerbatsch recommended that Plaintiff have x-rays of his right hip and spine.  (A.R. 338.)  Dr. Gerbatsch reviewed the x-rays in January 2013, stated that the "hips are OK and the back is well fused from L4 to S1," and noted that Plaintiff "[n]ow has moderate disc narrowing at L3-L4 and on exam continued pain in the R buttock."  (A.R. 340; *see also* A.R. 348–49.)  Dr. Gerbatsch prescribed Plaintiff pain medication.  (A.R. 342.)

In March 2013, Plaintiff saw Dr. Gerbatsch for back pain.  (A.R. 380.)  In May 2013, Plaintiff saw Dr. Gerbatsch again complaining of pain in both legs, especially the right leg.  (A.R. 377.)  Dr. Gerbatsch noted Plaintiff's statement that he can neither sit nor stand for a long period of time due to his back pain.  (A.R. 377.)  Dr. Gerbatsch continued Plaintiff's pain medication treatment.  (A.R. 378–79.)  In June 2013, Plaintiff saw Dr. Gerbatsch regarding complaints of shooting pain down his right leg.  (A.R. 374.)  At that time, Dr. Gerbatsch reviewed Plaintiff's x-rays again and stated "r hip was wnl and L hip has some calcification of the tendons.  Does have severe DDD of the l-spine above the surgery level." (A.R. 374.)  Dr. Gerbatsch referred Plaintiff to a pain management specialist.  (A.R. 376.) In July 2013, Plaintiff saw Dr. Gerbatsch. Plaintiff reported that he had pulled a muscle in his leg and woke up one morning barely able to move his left arm.  (A.R. 371.)

In October 2013, Plaintiff reported pain in the left elbow, left groin, and right shoulder.  (A.R. 365.)  Dr. Gerbatsch refilled Plaintiff's subscription for pain medication and noted that he needed to send Plaintiff's medical records and x-rays to a pain management consultant. (A.R. 367.) Two weeks later, Plaintiff saw Dr. Gerbatsch again. Dr. Gerbatsch noted that Plaintiff had seen a pain specialist who recommended epidural injections and physical therapy for Plaintiff's pain.  (A.R. 362.)  Plaintiff also reported that his elbow pain had subsided and that he planned to go to physical therapy for his right shoulder.  (A.R. 362.)  In December 2013, Plaintiff reported to Dr. Gerbatsch that the

epidural injections had helped his pain for approximately five days, but the pain returned thereafter. (A.R. 359.)  In January 2014, Plaintiff reported severe pain in his left upper thigh and stated that he was having a hard time lifting up his leg when climbing a curb or stairs. (A.R. 356.) Dr. Gerbatsch noted that Plaintiff has osteoarthritis of the left hip. (A.R. 356–57.)  Dr. Gerbatsch refilled Plaintiff's pain medications and scheduled an x-ray of Plaintiff's left hip.  (A.R. 358.)

In May 2013, Dr. Gerbatsch filled out a Verification of Physical/Mental Incapacity – General Assistance Form.  (A.R. 351.)  In the form, Dr. Gerbatsch stated that Plaintiff has a permanent disability and can perform "limited part-time work."  (A.R. 351.)  Dr. Gerbatsch noted that Plaintiff had partial capacity to lift, push, or pull 0-10 pounds, but had no capacity to lift, push, or pull anything greater than 10 pounds.  (A.R. 351.)  Dr. Gerbatsch further stated that Plaintiff had partial capacity for minimal use of his left or right hand and for continuous sitting, but no capacity for continuous standing, overheard work, or squatting/kneeling.  (A.R. 351.)  Lastly, Dr. Gerbatsch noted that Plaintiff's medical condition did not permit gardening/maintenance work, but did permit restricted, sedentary/clerical work.  (A.R. 351.)

On December 18, 2013, Dr. Gerbatsch filled out a Physical Medical Source Statement.  Dr. Gerbatsch diagnosed Plaintiff with chronic lumbar pain, non-insulin-dependent diabetes mellitus ("NIDDM"), and hypertension ("HTN"), with a fair prognosis. (A.R. 352.)  Dr. Gerbatsch reported that Plaintiff has pain in his back, right leg, and feet, and Plaintiff walks with a limp.  (A.R. 352.)  Dr. Gerbatsch reported that Plaintiff can sit for 10-15 minutes at one time before needing to stand, and stand for 20-30 minutes at one time before needing to sit down or walk around.  (A.R. 353.)  In an eight-hour workday, Dr. Gerbatsch stated that Plaintiff can sit, stand, or walk for less than two hours.  (A.R. 353.)  Dr. Gerbatsch added that Plaintiff must sometimes use a cane or other hand-held assistive device while standing or walking due to pain, weakness, and imbalance.  (A.R. 354.)  Dr. Gerbatsch further stated that Plaintiff can frequently lift and carry less than 10 pounds, occasionally lift and carry 10 pounds, and never lift and carry 20 or 50 pounds.

(A.R. 354.)  Additionally, Dr. Gerbatsch reported that Plaintiff can rarely climb stairs, and can never twist, stoop, crouch/squat, or climb ladders.  (A.R. 354.)

### e.   *William Wilson, M.D.*

In October 2013, Plaintiff saw Dr. Wilson for an initial pain management consultation.  (A.R. 389–91.)  Plaintiff reported low back pain, upper extremity pain, leg and foot pain, and neck pain.  (A.R. 389.)  Dr. Wilson noted that x-rays of Plaintiff's lumbar spine showed L4-S1 fusion with degenerative disc changes at L3, 4.  (A.R. 389.)  Dr. Wilson diagnosed Plaintiff with lumbar spondylosis, post laminectomy lumbar, and myofascial pain syndrome.  (A.R. 391.)  Dr. Wilson recommended injections in the right erector spinae and, if that did not provide relief, medial branch nerve blocks in the right L3, 4 facet joint.  (A.R. 391.)  Dr. Wilson also recommended physical therapy after the injections.  (A.R. 391.)

In December 2013, Plaintiff received epidural injections.  (A.R. 386.)  Dr. Wilson also prescribed Plaintiff physical therapy for myofascial pain.  (A.R. 387–88.)

### 2.   **Examining Physician Evidence**

### a.   *Robert J. MacArthur, M.D.*

On July 12, 2012, Dr. MacArthur performed an orthopedic consultation on Plaintiff at the request of the Department of Social Services.  (A.R. 314–20.)  Dr. MacArthur met with Plaintiff, but no orthopedic records were available for his review.[4]  (A.R. 314–20.)  Dr. MacArthur was asked to address the following complaints of Plaintiff's: (1) low back pain wrapping around the waist, and (2) bilateral hand irritability with repetitive motion, volar aspect.  (A.R. 315.)

Based on Plaintiff's oral history, Dr. MacArthur noted the following medical background: Plaintiff had back surgery in 2005, carpal tunnel release in 2006, two shoulder

---

[4] The Court notes that this consultation occurred around the time Plaintiff first started seeing Dr. Gerbatsch, therefore many of the relevant medical records were not yet available.

surgeries, and ring finger and middle finger surgery.  (A.R. 315.)  Plaintiff identified no other illnesses, although he listed Metformin as one of his medications.  (A.R. 315.)  Dr. MacArthur further noted that Plaintiff was able to get on and off the examination table without assistance, did not use any assistive device for ambulation, and was able to manipulate the use of a pen with ease.  (A.R. 316–17.)

After a physical examination, Dr. MacArthur noted that he would expect "mild functional impairment" due to Plaintiff's lumbosacral spine status post L4-5, L5-S1 disc replacement with posterior instrumentation, which would limit Plaintiff's activities.  (A.R. 318.)  Dr. MacArthur also stated that he would expect "no functional disability" related to Plaintiff's carpal tunnel syndrome and that this condition would not limit Plaintiff's activities.  (A.R. 318.)

Based on the exam, Dr. MacArthur offered several exertional and postural limitations.  Dr. MacArthur stated that Plaintiff can occasionally lift and/or carry 50 pounds; can frequently lift and/or carry 25 pounds; and can stand, walk, or sit for approximately six hours in an eight-hour workday.  (A.R. 319.)  Dr. MacArthur further opined that Plaintiff can frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and can occasionally climb ladders, ropes, and scaffolds.  (A.R. 319.)  Dr. MacArthur opined that Plaintiff's ability to push and/or pull is unlimited.  (A.R. 319.)  Dr. MacArthur did not find any manipulative, visual/communicative, or environmental limitations.  (A.R. 319–20.)  Additionally, Dr. MacArthur stated that Plaintiff does not need a cane or hand-held assistive device for ambulation. (A.R. 319.)

### 3.     <u>Non-Examining Physician Evidence</u>

#### a.     <u>*S. A. Brodsky, D.O.*</u>

In the initial Disability Determination on July 24, 2012, Dr. Brodsky, a state agency reviewing physician and a fellow of the American College of Surgeons, reviewed Plaintiff's medical records. Dr. Brodsky opined that he concurred with an assessment of "severe MDI that limits performance to no more than a MEDIUM pRFC level."  (A.R. 62–71.)  Dr. Brodsky stated that "[n]either sublisting supra is met/equaled and no medical

inconsistencies or 20 CFR issues reserved to the commissioner are identified." (A.R. 66.) Dr. Brodsky found "[n]o NIDDM end organ sequellae" and gave "[s]ubstantial weight" to examining physician Dr. MacArthur's July 12, 2012 report because of "content, specialty certification, and recentness." (A.R. 66–67.)

Dr. Brodsky concluded that Plaintiff has one or more medically determinable impairments, including a severe spine disorder and a non-severe dysfunction in major joints, and that these impairments could reasonably be expected to produce Plaintiff's pain or other symptoms. (A.R. 66–67.) Dr. Brodsky found Plaintiff partially credibly as "the presence of MDI is established by the medical evidence, however, the alleged severity of the impairment is not fully supported by the objective findings." (A.R. 66–67.)

In assessing physical RFC, Dr. Brodsky stated that Plaintiff can occasionally lift and/or carry 50 pounds, can frequently lift and/or carry 25 pounds, and can stand, walk, or sit for approximately six hours in an eight-hour workday. (A.R. 68.) Dr. Brodsky further opined that Plaintiff's ability to push and/or pull is unlimited. (A.R. 68.) Dr. Brodsky added that Plaintiff can frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but can never climb ladders, ropes, or scaffolds. (A.R. 68–69.) Dr. Brodsky did not find any manipulative, visual, communicative, or environmental limitations. (A.R. 69.)

### b. *K. Mauro, M.D.*

On reconsideration of the Disability Determination on March 19, 2013, Dr. Mauro, a state agency reviewing physician, reviewed Plaintiff's medical records. (A.R. 73–82.) Dr. Mauro noted that no worsening of Plaintiff's condition was alleged on reconsideration, but Plaintiff had received additional treatment. (A.R. 76.) Dr. Mauro further noted Plaintiff's complaints of back and hip pain in the medical records from Operation Samahan Family dated November 16, 2012 and December 11, 2012. (A.R. 76.) In conclusion, Dr. Mauro found "[t]here are no objective findings that contradict the prior decision." (A.R. 76.)

/ / /

In finding that Plaintiff has one or more medically determinable impairments, Dr. Mauro added non-severe essential hypertension and non-severe diabetes mellitus to the impairments listed in the initial determination.  (A.R. 76–77.)  Dr. Mauro also found Plaintiff partially credible and gave great weight to the opinion of Dr. MacArthur.  (A.R. 77.)  Dr. Mauro listed the same limitations in the physical RFC assessment as Dr. Brodsky.  (A.R. 78–79.)

### B.   **The Hearing**

#### 1.   **Plaintiff's Testimony**

On February 28, 2014, Plaintiff testified at a hearing before the ALJ.  (A.R. 38–61.)  Plaintiff, 55 years old,[5] testified that the highest level of education he had completed was twelfth grade and three years of college. (A.R. 41, 43.)  Plaintiff represented that he worked as a custodian for the City of San Diego for 15 years, as a security guard for RBW Security from approximately 2007 to 2008, and as a handyman from 2007 to 2010.  (A.R. 42, 43, 49, 53–55.)  Plaintiff asserted that he last worked as a custodian and was laid off on June 30, 2010.  (A.R. 42, 43.)  While working as a custodian, Plaintiff stated that he generally had to lift 50 pounds or more.  (A.R. 43.)  Plaintiff further testified that he is 5'7" and 206 pounds.  (A.R. 43.)

Plaintiff testified that the following problems are preventing him from working: (1) problems with both hands; (2) braces on each side of his spine; (3) shooting pain down the front and back of both legs; (4) hip pain; and (5) hand pain.  (A.R. 43–47.)  Plaintiff stated that he had back surgery in 2004 and 2005, carpal tunnel surgeries in both hands in approximately 2006, and surgery on his right shoulder in 1995 and 2011.  (A.R. 44–47.)

---

[5] During the hearing, the ALJ noted that Plaintiff was 55 years old when he submitted his application for SSI benefits in April 2012. (A.R. 41.) The ALJ asked Plaintiff's counsel if he objected to using Plaintiff's age at the time of application during the hearing. (A.R. 41.) Plaintiff's counsel did not object. For the record, the Court notes that Plaintiff was born on March 28, 1957, and thus was actually 56 years old on the date of his hearing. (A.R. 62, 149.)

The ALJ noticed that Plaintiff was wearing braces on both hands.  (A.R. 45–46.)  Plaintiff testified to having significant problems, including weakness and difficulty writing, with both hands, especially his right hand.  (A.R. 46–47.)  Plaintiff stated that he is right-handed.  (A.R. 47.)  Plaintiff further testified that he has pain in his shoulders that can be felt in his neck, but he can still raise his arms.  (A.R. 48.)  Plaintiff noted that he has had pain in both hips since 2004 and that he has constant tingling, numbness, and shooting pain down the front and back of his legs.  (A.R. 48–49.)

Plaintiff then testified that he lives his with daughter. (A.R. 50.) Plaintiff testified that his daily activities include trying to alleviate his pain, which can be so intense that it makes him cry.  (A.R. 50.)  Plaintiff stated that he is able to wash dishes, do laundry, and cook.  (A.R. 50.)  Plaintiff further testified that he is able to drive, but has not done so in two years because he does not own a car.  (A.R. 50–51.) Plaintiff testified that he can sit or stand for 20-30 minutes before he is uncomfortable.  (A.R. 51.)  Finally, Plaintiff testified that he has trouble lifting his grandson who weighs 15 pounds.  (A.R. 51.)

## 2.   <u>Vocational Expert's Testimony</u>

Next, the ALJ took testimony from Corrine Porter, a vocational expert.  (A.R. 38–61.)   Ms. Porter testified that Plaintiff's prior work experience is described in the *Dictionary of Occupational Titles* as: (1) a custodian, which is a semi-skilled position with a medium exertion level as defined and as performed by Plaintiff that requires a specific vocational preparation ("SVP") time of 3; (2) a security guard, which is a semi-skilled position with a light exertion level as defined and as performed by Plaintiff that requires an SVP time of 3; and  (3) a handyman, which is a skilled position with a medium exertion level as defined but a heavy exertion level as performed by Plaintiff that requires an SVP time of 7. (A.R. 57–58.)

The ALJ asked Ms. Porter to consider a hypothetical claimant with the same education, work history, and skills as Plaintiff who: (1) is limited to light work, (2) can perform any of Plaintiff's past work as he performed it or as normally performed, (3) can frequently engage in postural activities and use his hands bilaterally, (4) can occasionally

14

work above shoulder level with the right arm, and (5) cannot use ladders, ropes, scaffolds, operate hazardous machinery, work at unprotected heights, forcefully grasp or torque with either hand, or lift something very heavy.  (A.R. 58–59.)  Ms. Porter responded that such a person could perform Plaintiff's past position as a security guard, either as Plaintiff performed it or in an unskilled security guard position.  (A.R. 59.)

Thereafter, Plaintiff's counsel asked Ms. Porter whether her opinion would change if the hypothetical claimant was "restrict[ed] to unskilled work at SVP 1 or 2 level because of the interference of pain on concentration and focus."  (A.R. 60.)  Ms. Porter testified that, with this added restriction, the hypothetical claimant could not perform any of Plaintiff's past work.  (A.R. 60.)  Plaintiff's counsel also asked Ms. Porter whether the restriction listed in Exhibit 9F—standing and sitting limited to less than two hours each— would preclude a hypothetical claimant's ability to work full time.  (A.R. 60.)  Ms. Porter answered in the affirmative.  (A.R. 60.)  Lastly, Plaintiff's counsel asked Ms. Porter whether her opinion would change if, in addition to the limitations set forth in the ALJ's original hypothetical question, the hypothetical claimant would be off task 25 percent of the workday or more because of symptoms associated with health problems and would be absent more than four days per month.  (A.R. 61.)  Ms. Porter testified that none of Plaintiff's past relevant work would be available to a hypothetical claimant with those restrictions.  (A.R. 61.)

### C.   The ALJ's Findings

On March 20, 2014, the ALJ rendered an unfavorable decision regarding Plaintiff's application for disability benefits. (A.R. 24–37.)   The ALJ followed the five-step, sequential evaluation process in rendering his decision. At step one, the ALJ concluded that Plaintiff "has not engaged in substantial gainful activity since April 30, 2012, the application date." (A.R. 29.)

At step two, the ALJ concluded that Plaintiff has the following severe impairments: (1) lumbosacral spine status post L4-5, L5-S1 disc replacement with posterior instrumentation; (2) mild obesity, (3) poorly controlled hypertension; and (4) status post

two right shoulder surgeries. (A.R. 29.)

At step three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meet or equal the severity of impairments contained in the Listing of Impairments. (A.R. 29.)

Prior to step four, the ALJ determined that Plaintiff has the RFC to perform light work, with the limitation that "postural activities" could be performed frequently as opposed to without limitation. (A.R. 30.) The ALJ found that Plaintiff can frequently use his hands bilaterally and can occasionally perform work above shoulder level with his right arm. (A.R. 30.) The ALJ further determined that Plaintiff can never climb ladders, ropes, or scaffolds; cannot operate hazardous machinery or work at unprotected heights; and cannot forcefully grasp or torque with either hand. (A.R. 30.)

In making this assessment, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. (A.R. 31.) In evaluating the medical evidence, the ALJ assigned some weight to the opinions of examining physician Dr. MacArthur and non-treating physicians Dr. Brodsky and Dr. Mauro. (A.R. 32.) The ALJ gave no weight to the opinion of treating physician Dr. Gerbatsch. (A.R. 32.)

The ALJ then proceeded with step four of the sequential process. At this step, the ALJ found Plaintiff capable of performing his past relevant work as a security guard. (A.R. 33.) Thus, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act. (A.R. 33.)

## V.   DISCUSSION

### A.   The ALJ Erred in Rejecting the Treating Physician's Opinion

#### 1.   Parties' Arguments

In his motion for summary judgment, Plaintiff contends that the ALJ committed reversible error by failing to provide legally sufficient reasons for rejecting Dr. Gerbatsch's opinion while determining Plaintiff's RFC. Specifically, Plaintiff contends that the ALJ rejected Dr. Gerbatsch's opinion as contrary to objective medical evidence regarding

Plaintiff's carpal tunnel syndrome, which is an insufficient basis for rejection as Dr. Gerbatsch did not diagnose Plaintiff with carpal tunnel syndrome. (ECF No. 16-1, pg. 6.) Second, Plaintiff contends that the ALJ improperly rejected Dr. Gerbatsch's opinion in favor of Dr. MacArthur's opinion regarding Plaintiff's range of motion without adopting Dr. MacArthur's opinion in full. *Id.* Thus, Plaintiff argues that the ALJ improperly selected different medical opinions with which he agreed and improperly substituted his own interpretation of the medical evidence. *Id.* Third, Plaintiff argues that the ALJ improperly rejected Dr. Gerbatsch's opinion as overstating Plaintiff's ambulatory limitations, but misstated Dr. Gerbatsch's testimony regarding those limitations. *Id.* at 7. Finally, Plaintiff argues that the ALJ erred by providing a blanket statement for rejecting Dr. Gerbatsch's two medical opinions, rather than offering reasons for rejecting each opinion. *Id.* Plaintiff seeks reversal of Defendant's denial and an award of disability benefits, or, alternatively, remand for further administrative proceedings.

In Defendant's cross-motion for summary judgment, Defendant asserts that the ALJ properly rejected Dr. Gerbatsch's opinion as inconsistent with: (1) the opinions of the state agency reviewing physicians, (2) the opinion of examining physician Dr. MacArthur, and (3) Plaintiff's testimony regarding his daily activities. Thus, Defendant asserts that the ALJ's decision should be upheld.

### 2.   <u>Legal Standard</u>

In assessing a disability claim, an ALJ may rely on medical "opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). It is the ALJ's responsibility to resolve conflicts in presented medical opinions. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). In doing so, the Commissioner applies a hierarchy of deference to these three types of opinions. The opinion of a treating physician is generally entitled to the greatest weight. *Lester,* 81 F.3d at 830 (citation omitted). "The opinion of an examining physician is, in turn, entitled to

greater weight than the opinion of a nonexamining physician." *Id.* (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984)). However, "the findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings." *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996), *cert. denied*, 519 U.S. 1113 (1997) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 752 (9th Cir. 1989)).

"The opinion of a treating physician is given deference because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'" *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (citing *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)). "However, the opinion of the treating physician is not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan*, 169 F.3d at 600 (citations omitted). If the treating physician's opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques, or is inconsistent with other substantial evidence in the record, it is not entitled to controlling weight. *Orn v. Astrue*, 495 F.3d 625, 631–32 (9th Cir. 2007) (citing Social Security Ruling 96-2p). When the opinion of a treating physician is contradicted by another physician's opinion, the ALJ may reject the opinion of the treating physician only if the ALJ provides "specific and legitimate reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

In the event that an ALJ finds that a treating physician's opinion is not entitled to controlling weight, the ALJ still must consider the factors listed in 20 C.F.R. § 404.1527(c)(2)-(6) to determine what weight to accord the opinion. *See* Social Security Ruling 96-2p (Even when a treating physician's opinion is not entitled to controlling

weight, it should not be rejected. "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527."). The factors include: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) the specialization of the treating source; and (6) any other factors brought to the ALJ's attention that tend to support or contradict the opinion.  20 C.F.R. § 404.1527(c)(2)-(6).

### 3.   Analysis

Here, the Court finds that the ALJ erred in rejecting the opinion of Dr. Gerbatsch for two reasons. First, even if Dr. Gerbatsch's opinion was not entitled to controlling weight, the ALJ was required to "give deference to and accord some weight to [Dr. Gerbatsch's] opinions." *Kinzer v. Colvin*, 567 Fed. App'x 529, 530 (9th Cir. 2014) (emphasis added) (finding that an ALJ erred in failing to give any deference to or accord any weight to two treating physicians' opinions despite finding the opinions non-controlling); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (stating that an ALJ may not just disregard a treating physician's opinion, but must "consider the factors set out in 20 C.F.R. § 404.1527(c)(2)-(6) in determining how much weight to afford the treating physician's medical opinion"). Here, the ALJ did not consider the factors set forth in 20 C.F.R. § 404.1527(c)(2)-(6) or accord Dr. Gerbatsch's opinion any weight. Instead, the ALJ simply "g[ave]. . . no weight to Dr. Gerbatsch's opinion." (A.R. 32.) Therefore, the ALJ erred in rejecting Dr. Gerbatsch's opinion.

Second, the ALJ erred by failing to provide specific and legitimate reasons for rejecting Dr. Gerbatsch's opinions. Because there is medical evidence in the record that conflicts with Dr. Gerbatsch's medical opinions, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Gerbatsch's opinion. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  An ALJ meets this requirement by "'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. The ALJ must do

more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citations omitted).

Here, the ALJ did not provide specific reasons for rejecting Dr. Gerbatsch's opinions. Instead, the reasons provided are unclear and conclusory. In his opinion, the ALJ summarized the medical opinions set forth in Dr. Gerbatsch's May 16, 2013 Verification of Physical/Mental Incapacity – General Assistance Form and December 18, 2013 Physical Medical Source Statement. The ALJ then rejected Dr. Gerbatsch's "opinion" as though it were singular even though the medical records to which the ALJ refers contain various opinions that were proffered seven months apart. (A.R. 32.) Indeed, the ALJ offers only two statements related to his rejection of Dr. Gerbatsch's medical opinions. First, the ALJ stated that he "gives . . . no weight to Dr. Gerbatsch's opinion." (A.R. 32.) Second, the ALJ stated that he finds that "Dr. Gerbatsch's less than sedentary functional assessment appears to overstate [Plaintiff's] limitations." (A.R. 32.)

Essentially, the ALJ globally rejected Dr. Gerbatsch's medical opinions rather that providing reasons specific to Dr. Gerbatsch's various opinions regarding Plaintiff's condition. For example, Dr. Gerbatsch opined that Plaintiff walks with a limp and sometimes needs to use a cane or hand-held assistance device when walking or standing due to pain, weakness, and balance issues. (A.R. 352, 354.) The ALJ rejected this opinion without explanation, stating only "[Plaintiff] does not walk with a limp or use an assistive device for ambulation." (A.R. 32.) Further, Dr. Gerbatsch opined that Plaintiff is permanently disabled and can perform only limited, part-time, sedentary work. (A.R. 351.) The ALJ did not credit this opinion or offer specific reasons for rejecting it. Instead, the ALJ stated only that the state agency reviewing physicians and examining physician found Plaintiff capable of performing "medium work," but the ALJ determined that Plaintiff was capable of performing "a light range of work." (A.R. 32.)

Thus, the Court finds that the ALJ erred by failing to: (1) provide specific, legitimate reasons supported by substantial evidence for discounting Dr. Gerbatsch's medical

opinions, (2) consider the factors set out in 20 C.F.R. § 404.1527(c)(2)-(6) in connection with Dr. Gerbatsch's opinions, or (3) attribute any weight to Dr. Gerbatsch's opinions.

## B.   Remand Is Appropriate

In light of the ALJ's reversible error, the question is one of remedy. Plaintiff argues that the Court should apply the credit-as-true test, as opposed to the ordinary remand rule. Under the ordinary remand rule, when "the record before the agency does not support the agency action, . . . the agency has not considered all relevant factors, or . . . the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). Under the credit-as-true rule, a court can remand to an ALJ with instructions to calculate and award benefits if: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100–01 (9th Cir. 2014). Even when all three elements are satisfied, the decision whether to remand for further proceedings or just award benefits rests within the discretion of the court. *Id.* at 1101–02 (citation omitted).

As discussed above, the ALJ erred in rejecting Dr. Gerbatsch's medical opinions without providing legally sufficient reasons for doing so. The Court finds that further administrative proceedings would serve a meaningful purpose as Dr. Gerbatsch's opinions must be properly evaluated and conflicting medical evidence in the record must be properly resolved. Accordingly, the credit-as-true rule does not apply, and remand for further proceedings is appropriate. *See Kinzer v. Colvin*, 567 Fed. App'x 529, 530 (9th Cir. 2014) (finding the credit-as-true rule inapplicable and remanding a social security matter where the ALJ failed to properly reject the opinions of two treating physicians). On remand, the ALJ cannot reject Dr. Gerbatsch's opinions without providing "'specific and legitimate'

reasons supported by substantial evidence in the record for doing so." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citing *Murray v. Heckler,* 722 F.2d 499, 502 (9th Cir. 1983)). If the ALJ determines that Dr. Gerbatsch's opinion should not be given controlling weight, the ALJ must still address the weight to accord his opinion using the factors provided in 20 C.F.R. § 404.1527(c)(2)-(6).

## VI.   <u>CONCLUSION</u>

After a thorough review of the record in this matter and based on the foregoing analysis, the Court **GRANTS** Plaintiff's motion for summary judgment, **DENIES** Defendant's cross-motion for summary judgment, and **REMANDS** the case for further proceedings.

**IT IS SO ORDERED.**

Dated:  March 3, 2017

Hon. Roger T. Benitez
United States District Judge

15-cv-2417-BEN (DHB)